UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CATHERINE A.,

　　　　　*Plaintiff*,

　　v.

COMMISSIONER OF SOCIAL SECURITY,

　　　　　*Defendant*.

No. 24-cv-10424 (MEF)

**OPINION and ORDER**

\*　　\*　　\*

For the purposes of this brief Opinion and Order, the Court assumes all but full familiarity with the facts and procedural history of this case.

\*　　\*　　\*

A woman applied for disability benefits. See Catherine A. (S.S.A. A.L.J. Feb. 6, 2024), Administrative Record at 10.[1]

Her application was denied, and her motion for reconsideration was denied, too. See id. So she asked for a hearing before an administrative law judge ("ALJ"). See id.

A hearing was held over the phone, see Administrative Record at 36-74, and afterwards the ALJ affirmed the benefits denial. See Catherine A., Administrative Record at 21.

The Appeals Council affirmed the ALJ. See Administrative Record at 1.

And the applicant then filed this lawsuit in federal court. See Complaint (ECF 1).

---

[1]  The ALJ's 12-page decision can be found beginning at page 10 of the administrative record.

From this point, the applicant is called "the Plaintiff," and the Commissioner of Social Security is called "the Defendant."

\*   \*   \*

The Plaintiff's <u>first</u> argument: the ALJ erred by (i) concluding her posterior vitreous detachment[2] was a non-severe impairment, and (ii) failing to incorporate the limitations associated with this impairment when evaluating her residual functional capacity.  <u>See</u> Plaintiff's Memorandum of Law ("Plaintiff's Brief") (ECF 10) at 21–27.

The Court's conclusion: this argument does not work.

At step two, the ALJ concluded that the Plaintiff had five different severe impairments.[3]  So he moved onto step three.  And he ultimately considered all of the Plaintiff's "medically determinable impairments, including those that are not severe, when assessing [her] residual functional capacity."  <u>Catherine A.</u>, Administrative Record at 13.

"Under these circumstances, any error in failing to designate <u>additional</u> conditions as 'severe' was harmless --- and cannot serve as a basis for undoing the ALJ's decision."  <u>Julia G.</u> v. <u>Comm'r of Soc. Sec.</u>, 2026 WL 1898965, at *1 (D.N.J. July 2, 2026) (collecting numerous cases).

\*   \*   \*

<u>Second</u>, the Plaintiff argues that the ALJ should have concluded that she was only able to sit for 10 to 15 minutes at a time because of pain in her neck, back, hip, and knees.  <u>See</u> Plaintiff's Brief at 29–32.

---

[2]  The Cleveland Clinic describes posterior vitreous detachment as a "common age-related eye problem that occurs when the gel that fills your eyeball . . . separates from your retina." Posterior Vitreous Detachment, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/14413-posterior-vitreous-detachment (last visited July 16, 2026).  It often results in "an increase in specks or shadows of gray or black in [an individual's] vision."  <u>Id</u>.

[3]  They were (i) cervical and lumbar spine impairments; (ii) left shoulder and elbow impairment, status post left shoulder arthroscopy; (iii) right hip bursitis; (iv) osteoarthritis bilateral knees; and (v) irritable bowel syndrome.  <u>See</u> <u>Catherine A.</u>, Administrative Record at 12.

The ALJ concluded that the Plaintiff could perform "sedentary work as defined in 20 CFR 404.1567(a)." Catherine A., Administrative Record at 15.

Which means he believed the Plaintiff could sit for roughly six hours each workday. See Titles II & XVI: Determining Capability to Do Other Work-Implications of A Residual Functional Capacity for Less Than A Full Range of Sedentary Work, SSR 96-9P, 1996 WL 374185, at *6 (S.S.A. July 2, 1996) ("In order to perform a full range of sedentary work, an individual must be able to remain in a seated position for approximately 6 hours of an 8-hour workday, with a morning break, a lunch period, and an afternoon break at approximately 2-hour intervals.").

The ALJ acknowledged that the Plaintiff reported something else --- that she could sit for only 10 to 15 minutes at a time. See Catherine A., Administrative Record at 16.

But he concluded the "overall of evidence of record" did not support this limitation. Id.

Among other things, he looked to treatment notes prepared by a Dr. Michael Moore, who examined the Plaintiff several times between 2019 and 2022. See Administrative Record at 426-37. Per the ALJ, these records were "unremarkable" and showed that "pain medication, cortisone injections, and physical therapy were effective in managing and controlling the [Plaintiff's] pain symptoms." Catherine A., Administrative Record at 17.

And the ALJ relied on treatment notes from the Plaintiff's primary care physician, Dr. Michael Wiener. See Administrative Record at 602-783. These records, per the ALJ, were "unremarkable as . . . to the [Plaintiff's] complaints regarding her shoulder pain, knee pain, joint pain, arm pain, neck pain, and back pain." See Catherine A., Administrative Record at 18. These records also suggested that the Plaintiff "was exercising on the treadmill a few times each week, had lost a couple of pounds, and was feeling well." Id.; see Administrative Record at 619, 663, 696, 698, 706.

In sum: the ALJ reviewed the relevant medical evidence and concluded that the Plaintiff was not limited to sitting to only 10 to 15 minutes at a time, even as that is what she reported about herself.

That conclusion was supported by substantial evidence, and the Court is therefore not allowed to second guess it. See Chandler

v. Comm'r of Soc. Sec., 667 F.3d 356, 359 (3d Cir. 2011) (the court is "not permitted to re-weigh the evidence or impose [its] own factual determinations").

*   *   *

The Plaintiff's third argument: the ALJ did not adequately account for her irritable bowel syndrome in his assessment of the Plaintiff's residual functional capacity. See Plaintiff's Brief at 32-36.

The ALJ recognized that the Plaintiff reported that she was suffering from irritable bowel syndrome. See Catherine A., Administrative Record at 19.

But essentially the same as before --- the ALJ concluded that this was at odds with the "overall evidence of record." Id. at 16.

Here, the ALJ focused on records from a gastroenterologist, Dr. Michael Rahmin, who treated the Plaintiff between June 2021 and June 2023. See Catherine A., Administrative Record at 19 (citing Administrative Record at 1151-81).

And the ALJ indicated that he was unpersuaded by the limitations the Plaintiff described in this area. Among other things, the ALJ looked to treatment records indicating that, during the relevant time period, the Plaintiff "did not report fatigue, had no significant weight change, no rash, no joint pains, seemed comfortable and in no apparent distress, and reported no abdominal pain on palpitation." Id.; see Administrative Record at 1160.

And the ALJ looked to evidence suggesting that the Plaintiff had medication for irritable bowel syndrome available that that she was apparently reluctant to take. See Catherine A., Administrative Record at 19; Administrative Record at 682.

In short, the ALJ catalogued the relevant evidence and landed on the conclusion that the symptoms associated with the Plaintiff's irritable bowel syndrome were not as serious as she reported.

That determination was amply supported by substantial evidence, and this Court will not revisit it. See Chandler, 667 F.3d at 359.

*   *   *

The decision of the Commissioner is affirmed.

IT IS on this 20th day of July, 2026, **SO ORDERED.**

_____
Michael E. Farbiarz, U.S.D.J.